UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DOES 1-98**, *et al.*, | |
| Plaintiffs, | Civil Action No. **12-1855 (RJL)** |
| v. | Judge Richard J. Leon |
| **BOIES SCHILLER & FLEXNER, LLP**, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BOIES, SCHILLER & FLEXNER, LLP'S MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(6) FOR FAILURE TO STATE A CLAIM**

Douglass A. Mitchell, Bar No. WI0029
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, Nevada 89101

David R. Boyd, Bar No. 225359
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015

*Attorneys for Defendant*
*Boies, Schiller & Flexner LLP*

*Of Counsel*
Nicholas A. Gravante Jr.
Lee S. Wolosky
Magda Jimenez Train
Stephen Kyriacou, Jr.
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022

February 4, 2013

# TABLE OF CONTENTS

Page No.

PRELIMINARY STATEMENT .................................................................... 1

I.  THIS COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE
    TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED…. .................... 4

  A.  Plaintiffs' Antitrust Allegations Fail To State A Claim........................................ 5

    1.  *Plaintiffs' Conspiracy Allegations Are Incomprehensible And
        Fail To Put BSF On Notice As Required Under The Rules.* ....................... 5

    2.  *Plaintiffs Fail To Allege Antitrust Standing* ............................................... 8

      a..  Plaintiffs Do Not Allege Any Injury-In-Fact. ................................. 8

      b.   Even Assuming Plaintiffs Had Properly Alleged An Injury, It
           Is Not The Kind Of Injury That The Antitrust Laws Regulate. ..... 10

  B.  Plaintiffs Fail To State A Claim For Invasion Of Privacy. .................................. 12

    1.  *Plaintiffs Fail To State A Claim For Public Disclosure Of
        Private Facts.* ............................................................................................ 12

      a.   Plaintiffs' Public Disclosure Of Private Facts Claim Is Time-
           Barred. .......................................................................................... 13

      b.   BSF's Plaintiffs Authorized It To File Suit Using Their Real
           Names  .......................................................................................... 13

      c.   The Fact That The Doe Plaintiffs Were Suing Chiquita
           Was Not Private. ........................................................................... 14

      d.   The Publication Of The Doe Plaintiffs' Names Is Not
           Highly Offensive. .......................................................................... 15

    2.  *Plaintiffs Fail To State A Claim For False Light.* .................................... 15

      a.   Plaintiffs' False Light Claim Is Time Barred. ............................. 16

      b.   The Published Facts Were Not False. ........................................... 16

      c.   The Published Facts Did Not Place The Doe Plaintiffs In A
           False Light That Would Be Offensive To A Reasonable Person.  17

  C.  Plaintiffs Fail To State A Claim For Tortious Interference With Contract. ......... 17

1.    *Neither BSF Nor Torrado Knew Of Wolf's Contracts With The Doe
      Plaintiffs.* ................................................................. 19

2.    *Neither BSF Nor Its Agents Intentionally Procured The Breach* ...............
      *Of Wolf's Purported Contracts With The Doe Plaintiffs.* ........................ 20

3.    *Neither The Doe Plaintiffs Nor Wolf Suffered Any Damage
      As A Result Of The Doe Plaintiffs Signing POAs With BSF.* .................... 22

D.    Plaintiffs Fail To State A Claim For Fraud ............................................. 23

      1.    *Plaintiffs Fail To Plead Knowledge of Falsity.* ...................................... 24

      2.    *Plaintiffs Fail To Plead Damages.* ....................................................... 24

E.    Plaintiffs Fail To State A Claim For Negligence ..................................... 25

      1.    *The Foreign Corrupt Practices Act Is Not Concerned With
            Safety And Cannot Form The Basis Of A Negligence Per Se
            Claim As A Matter Of Law.* ............................................................... 25

      2.    *The Plaintiffs Insufficiently Allege Negligent Hiring And Supervision.* ... 28

F.    Plaintiffs Fail To State A Claim For Malpractice ................................... 30

CONCLUSION ............... ................................................................. 32

## TABLE OF AUTHORITIES

### Cases

*Alexander v. Washington Gas Light Co.*,
481 F. Supp. 2d 16 (D.D.C. 2006) .................................................................. 16

*Am. Petroleum Institute v. Technomedia Intern., Inc.*,
699 F. Supp. 2d 258 (D.D.C. 2010) ................................................................. 4

*Andrx Pharmaceuticals, Inc. v. Biovail Corp. Int'l*,
256 F.3d 799 (D.C. Cir. 2001) ........................................................................ 8

*Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*,
459 U.S. 519 (1983) ........................................................................................ 8

*Atlantic Exposition Srvs. v. SMG*,
262 F. App'x 449 (3rd Cir. 2008) .................................................................. 11

*Bell Atlantic v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 5, 30

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) ...................................................................................... 11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977) ................................................................................. 8, 10

*Ceco Corp. v. Coleman*,
441 A.2d 940 (D.C. 1982) ............................................................................. 27

*Chase v. Gilbert*,
499 A.2d 1203 (D.C. 1985) ........................................................................... 31

*City of Moundridge, KS v. Exxon Mobil Corp.*,
471 F. Supp. 2d 20 (D.D.C. 2007) .............................................................. 7, 8

*F. Hoffmann-La Roche Ltd. v. Empagran S.A.*,
542 U.S. 155 (2004) ........................................................................................ 9

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*,
944 A.2d 1055 (D.C. Cir. 2008) .................................................................... 23

*Gaujacq v. EDF, Inc.*,
601 F.3d 565 (D.C. Cir. 2010) ...................................................................... 18

*Grunseth v. Marriott Corp.*,
872 F. Supp. 1069 (D.D.C. 1995) ................................................................. 13

*Halberstam v. Welch*,
705 F.2d 472 (D.C. Cir. 1983) ........................................................................ 6

*Hinton v. Rudasill*,
624 F. Supp. 2d 48 (D.D.C. 2009) ................................................................ 31

*Howard Univ. v. Watkins*,
   857 F. Supp. 2d 67 (D.D.C. 2012) ................................................................. 23

*Immunocept, LLC v. Fulbright & Jaworski, LLP*,
   504 F.3d 1281 (Fed. Cir. 2007) .................................................................... 13

*In Naartex Consulting Corp. v. Watt*,
   722 F.2d 779 (D.C. Cir. 1983) ..................................................................... 23

*J.S. Service Center Corp. v. General Elec. Technical Services Co, Inc.*,
   937 F. Supp. 216 (S.D.N.Y. 1996) ............................................................... 26

*Kaempe v. Myers*,
   367 F.3d 958 (D.C. Cir. 2004) ....................................................................... 5

*Kiobel v. Royal Dutch Petroleum Co.*,
   132 S. Ct. 1738 (2012) ..................................................................................... 2

*Klayman v. Judicial Watch, Inc.*,
   2007 WL 1034936 (D.D.C. Apr. 3, 2007) ............................................. 13, 16

*Kowal v. MCI Commc'ns Corp.*,
   16 F.3d 1271 (D.C. Cir. 1994) ....................................................................... 5

*Macktal v. Garde*,
   111 F. Supp. 2d 18 (D.D.C. 2000) ............................................................... 32

*Mahnke v. Washington Metro. Area Transit Auth.*,
   821 F. Supp. 2d 125 (D.D.C. 2011) ............................................................. 27

*Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Sys., Inc.*,
   665 F.2d 1066 (D.C. Cir. 1981) ................................................................... 23

*Mawalla v. Hoffman*,
   569 F. Supp. 2d 253 (D.D.C. 2008) ....................................................... 30, 31

*Phelm v. City of Mount Rainer*,
   805 A.2d 930 (D.C. 2002) ........................................................................... 28

*Saba v. Compagnie Nationale Air France*,
   78 F.3d 664 (D.C. Cir. 1996) ...................................................................... 27

*Scott v. United States*,
   608 F. Supp. 2d 73 (D.D.C. 2009) ................................................................. 5

*Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*,
   565 A.2d 285 (D.C. 1989) ................................................................. 17, 20, 21

*Stovell v. James*,
   810 F. Supp. 2d 237 (D.D.C. 2011) ......................................................... 23, 25

*Tabb v. Dist. of Columbia*,
   477 F. Supp. 2d 185 (D.D.C. 2007) ............................................................... 6

*Tarpeh-Doe v. United States*,
   28 F.3d 120 (D.C. Cir. 1994) ...................................................................... 28

*United States v. Kay (Kay I)*,
   359 F.3d 738 (5th Cir. 2004) ............................................................. 27

*United States v. Kay (Kay II)*,
   513 F.3d 432 (5th Cir. 2007) ............................................................. 26

*Veal v. Geraci*,
   23 F.3d 722 (2d Cir. 1994) ................................................................ 13

*Vernitron Securities Litig.*,
   462 F. Supp. 391 (J.P.M.L. 1978) ..................................................... 10

*Vioxx Prods. Liab. Litig.*,
   760 F. Supp. 2d 640 (E.D. La. 2010) ................................................ 10

*Wagner v. Sellinger*,
   847 A.2d 1151 (D.C. 2004) ............................................................... 32

*Washburn v. Lavoie*,
   437 F.3d 84 (D.C. Cir. 2006) ....................................................... 15, 16

*Whittington v. United States*,
   867 F. Supp. 2d 102 (D.D.C. 2012) .................................................... 5

*Winder v. Erste*,
   566 F.3d 209 (D.C. Cir. 2009) ............................................................. 4

*Wolf v. Regardie*,
   553 A.2d 1213 (D.C. 1989) ........................................................ passim

## **Statutes**

15 U.S.C. §§ 1-7, 15 ................................................................................ 5

15 U.S.C. §§ 78dd-1, *et seq.* ......................................................... 25, 27

## **Rules**

Fed. R. Civ. P. 12(b)(1) .......................................................................... 32
Fed. R. Civ. P. 12(b)(6) .................................................................. 4, 8, 32

## **Other Authorities**

1 Callmann on Unfair Comp., Tr. & Mono. § 4:31 (4th ed. 2010) ............ 11

Federal Practice and Procedure: Civil § 1282 (3d ed. 2004) ..................... 7

## PRELIMINARY STATEMENT

The Complaint filed in this case amounts to little more than frivolous allegations made in a "kitchen sink" attempt to state any cause of action in complete disregard of relevant legal standards and the time and resources of our legal system. As a preliminary matter, Paul Wolf's first attempt to file this lawsuit resulted in a *sua sponte* dismissal without prejudice by Judge Gladys Kessler. *See Does 1-98 v. Boies Schiller & Flexner LLP*, No. 12 Civ. 1751 (D.D.C. Oct. 31, 2012) (the "Kessler Order") (attached herewith as Exhibit A to the Declaration of Douglass A. Mitchell, dated February 4, 2013 (hereinafter "Mitchell Decl.")).[1] That dismissal was based in part on Wolf's misrepresentations to the court about his standing to practice law in the District of Columbia and his "several egregious errors in the filing of his papers." *See id.* at 1. Wolf re-filed his case in this Court on November 15, 2012.

By way of background, Wolf and Boies, Schiller & Flexner LLP ("BSF"), along with at least one dozen other firms and organizations, represent more than six thousand Colombian citizens in at least eight different cases against Chiquita Brands International, Inc. ("Chiquita"), based on Chiquita's March 2007 plea of guilty to criminal charges of funding a known terrorist group in Colombia for many years. These cases, which seek to impose civil liability on Chiquita based on the Alien Tort Statute and various other legal theories, have been consolidated for pre-trial proceedings in a multidistrict litigation now pending before Judge Kenneth Marra in the Southern District of Florida (the "Chiquita MDL"). The Chiquita MDL has been stayed since May 2008 and has never advanced into the discovery stage. *See In re Chiquita Brands Int'l, Inc., Alien Tort Statute and Shareholder Derivative Litigation*, No. 08 Civ. 01916 (S.D. Fla. May

---

[1] A court may consider documents that are subject to judicial notice, such as dockets, which are public court records, and facts from prior related proceedings, without converting a motion to dismiss into a motion for summary judgment. *Vance v. Chao*, 496 F. Supp. 2d 182, 184 n.1 (D.D.C. 2007) (dockets as public court records); *Covad Commc'ns Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir 2005) (facts from prior related proceedings).

30, 2008) (first case management order, suspending all Rule 26(f) obligations) (Exhibit B to Mitchell Decl.). Indeed, most recently, the parties in the MDL all agreed to stay the case pending the Supreme Court's decision in *Kiobel v. Royal Dutch Petroleum Co.*, 132 S. Ct. 1738 (2012), and the appellate proceedings in the Eleventh Circuit regarding Judge Marra's decision on the motion to dismiss the cases (which was denied in part and granted in part). *See In re Chiquita Brands Int'l, Inc., Alien Tort Statute and Shareholder Derivative Litigation*, No. 08 Civ. 01916 (S.D. Fla. Nov. 9, 2012) (order granting stay pending interlocutory review) (Exhibit C to Mitchell Decl.).

Plaintiffs' Complaint, filed by Wolf on his own behalf and on behalf of 98 Doe Plaintiffs whom he purports to represent, is filled with numerous factual misrepresentations, unsupported legal claims, logical inconsistencies and outright lies. In essence, Wolf alleges that BSF, working with the Colombian firm of Heli Abel Torrado & Associados (the "Torrado firm") signed Power of Attorney agreements ("POAs") with numerous clients who had previously retained him.[2] Notably, BSF filed its first complaint in the MDL on April 14, 2010, more than two and a half years before the instant lawsuit was filed. Furthermore, Wolf only filed the instant lawsuit (1) after he was excluded by all the other plaintiffs' lawyers in the MDL ("the MDL Group") due to his uncooperative conduct, which was widely perceived to be contrary to

---

[2] Plaintiffs attach to their Complaint "an example" of the Spanish-language POAs that the Torrado firm executed with its clients. *See* Compl. ¶ 10, Ex. A. This Spanish-language document is accompanied by an uncertified English translation produced by Wolf, "with the help of" a Colombian English teacher who "is not a certified translator." Declaration of Paul David Wolf, Esq. in Support of Plaintiffs' Complaint, dated November 14, 2012 (the "Wolf Declaration") (attached to the Complaint as Exhibit A) ¶ 4. Due to a number of problems with this uncertified translation, BSF has provided a certified English translation of the Spanish-language POA attached to the Complaint. This certified translation (the "Certified POA") is attached as Exhibit D to the Mitchell Declaration. District courts routinely consider defendants' certified translations of exhibits incorporated by reference or attached to a plaintiff's complaint. *See*, *e.g.*, *Franco v. Dow Chem. Co.*, No. 03 Civ. 5094, 2003 WL 24288299, at *1 n.1 (C.D. Cal. Oct. 20, 2003); *Internet Corporativo S.A. de C.V. v. Bus. Software Alliance, Inc.*, No. 04 Civ. 2322, 2004 WL 3331843, at **3-4 (S.D. Tex. Nov. 15, 2004). Significantly, many of the allegations in the Complaint, besides being internally inconsistent, are contradicted by the plain language of this POA.

the interests of all plaintiffs suing Chiquita; and (2) at a time when he admits to having financial difficulties.  *See* Compl. ¶¶ 36, 38.

Each cause of action in the Complaint raises numerous poorly pled violations of law, unsupported by legal authority, as well as factually inconsistent allegations.  *First*, Plaintiffs' federal antitrust claim fails to identify either the specific provisions of antitrust law that have allegedly been violated or the other parties to BSF's alleged "antitrust conspiracy" and fails to establish the threshold requirement of antitrust standing.  *Second*, the invasion of privacy claim is not only time-barred, it is also entirely meritless, as the allegations of the Complaint make clear that no harm to the Doe Plaintiffs could possibly result from their public association with litigation against Chiquita in Colombia.  *Third*, the tortious interference claim fails due to Plaintiffs' failure to allege knowledge of the contracts with which BSF purportedly interfered, any actual breach of those contracts, BSF's intent to cause such breach or any resulting damages. *Fourth*, the fraud claim fails because Plaintiffs do not adequately allege knowledge of falsity or damages.  *Fifth*, the negligence claim fails because it is based on the unsupported premise that a violation of the Foreign Corrupt Practices Act, even if properly alleged, could constitute negligence per se and conclusory allegations that BSF negligently supervised its agents.  *Sixth*, Plaintiffs' malpractice claim fails because they repeatedly deny that the Doe Plaintiffs ever had an attorney-client relationship with BSF, fail to identify any reasonable duty that BSF has breached and explicitly acknowledge that damages, if any, could not be ascertained until after the trial of the underlying litigation against Chiquita.

In addition to the lack of any meaningful attempt to allege every element of their causes of action, as required the Federal Rules of Civil Procedure, the Complaint must be dismissed because of its failure to allege any real damages to Wolf and the Doe Plaintiffs.  At times, the

Complaint fails to allege any damages whatsoever.  *See* Compl. ¶¶ 202-13.  At other times, the

Complaint alleges damages, but those damage claims are either frivolous (*see*, *e.g.*, Compl.

¶¶ 169, 175, 195-201) or purely speculative (*see*, *e.g.*, Compl. ¶¶ 175 & n.21, 176-87, 191, 195-

201).  Indeed, Plaintiffs explicitly acknowledge that at least some of the damages they allege

with respect to their tortious interference claim as well as any potential malpractice damages "are

impossible to calculate at this time, since [the Doe] Plaintiffs have not yet lost their cases."

Compl. ¶ 175, n. 21.  Moreover, in a filing before the Judicial Panel on Multidistrict Litigation,

Wolf has taken the legally unsupportable position that he does not need to allege any damages at

all in this lawsuit and that such damages could not be determined for years.  *See In Re: Chiquita*

*Brands International, Inc. Alien Tort Statute and Shareholders Derivative Litigation*, No. 1916

(J.P.M.L. Dec. 3, 2012) at 11, 13 (claiming that "[n]one of the claims made by the Plaintiffs,

including fraud, tortious interference, invasion of privacy, malpractice, anti-trust violations, and

negligence, require a showing of definite and actual damages" and stating that a determination of

damages can only be made "years" from now, after the underlying litigation has run its course).

(Exhibit E to Mitchell Decl.).

     For the reasons described below, the Complaint must be dismissed for failure to state a

claim upon which relief can be granted.

## I.        THIS COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

     Dismissal under Rule 12(b)(6) is warranted where plaintiffs have "'failed to state

plausible grounds for relief.'"  *Am. Petroleum Institute v. Technomedia Intern., Inc.*, 699 F.

Supp. 2d 258, 263 (D.D.C. 2010) (quoting *Winder v. Erste*, 566 F.3d 209, 213 (D.C. Cir. 2009)).

On a Rule 12(b)(6) motion, plaintiffs are not entitled "to the benefit of any conceivable

inference."  *Id.*  Indeed, a court "need not accept inferences drawn by plaintiffs if such inferences

are unsupported by the facts set out in the complaint." *Id.* (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  Similarly, a court should not accept as true the complaint's factual allegations insofar as they are contradictory or "insofar as they contradict exhibits to the complaint." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004); *see also Whittington v. United States*, 867 F. Supp. 2d 102, 106 (D.D.C. 2012) ("Because plaintiff has directly contradicted certain of his claims with his factual allegations, those claims must be dismissed."); *Scott v. United States*, 608 F. Supp. 2d 73, 80-81 (D.D.C. 2009) (rejecting allegations that were "flatly contradicted" by the plaintiff's own statement of facts accompanying the amended complaint and by the exhibits accompanying the initial complaint).

### A. <u>Plaintiffs' Antitrust Allegations Fail To State A Claim.</u>

Plaintiffs sixth cause of action is a claim for an alleged "Civil Conspiracy to Violate the Sherman and Clayton Acts, 15 U.S.C. §§ 1-7, 15" and states that BSF entered a "cartel agreement" and "conspired to monopolize the market for legal services for persons injured by Chiquita Brands in Columbia."  Compl. ¶¶ 204, 205.  However, a close read of Plaintiffs' allegations demonstrates that the Complaint does not set out any cognizable theory of any antitrust violation and fails to properly state a claim because it (1) does not apprise Defendants of the claims being asserted against them; and (2) does not make a threshold showing of antitrust standing.

#### 1.   *Plaintiffs' Conspiracy Allegations Are Incomprehensible And <u>Fail To Put BSF On Notice As Required Under The Rules.</u>*

Plaintiffs' Complaint falls well short of Federal Rule of Civil Procedure 8's requirement that plaintiffs give a defendant "fair notice" of its claims and the grounds upon which they rest. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs' allegations with respect to an alleged antitrust violation are illogical.  While the Complaint makes inflammatory allegations

that BSF "conspired to monopolize the market" and that BSF entered a "formal and explicit agreement among competitors," it fails to provide any allegations that make out an antitrust claim.  Compl. ¶ 205.

*First*, the Complaint fails to name any of BSF's alleged co-conspirators.  The Complaint only makes general allegations with respect to BSF and eight unnamed defendants it describes as "other attorneys and law firms involved in the Chiquita litigation."  Compl. ¶ 155.[3]  Wolf knows the names of all of the attorneys who comprise the MDL Group.  *See* Compl. ¶¶ 23, 28-29.  He explains that his failure to name a single co-conspirator is not the result of his ignorance of their identities, but that it stems from his need for discovery to ascertain the "extent of [their] liability."  Compl. ¶¶ 155, 204.  Of course, as "to the extent of liability, once the conspiracy has been formed, all its members are liable for injuries caused by acts pursuant to or in furtherance of the conspiracy.  A conspirator need not participate actively in or benefit from the wrongful action in order to be found liable."  *Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983).  Thus, all Wolf needs to know in order to name the Doe Defendants in this suit is whether or not they were parties to the purported conspiracy.  Wolf's failure to name them constitutes an implicit admission that he lacks such knowledge and that he therefore does not have any basis for alleging that BSF actually conspired with *any party* to violate the antitrust laws.  *See Tabb v. Dist. of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007) (a single legal entity "cannot conspire with itself, just as it is impossible for an individual person to conspire with himself or herself").[4]

---

[3] The Complaint also makes no attempt to specify which causes of action are asserted against which Defendants, stating only that the Doe Defendants "are either vicariously or otherwise liable for the conduct alleged herein."  Compl. ¶ 155.

[4] Although Plaintiffs allege that the Torrado firm and its employees generally conspired with BSF (*see* Compl. ¶ 160), it is well-settled that an agent cannot conspire with his or her principal to commit an antitrust violation.  *See Ashley Meadows Farm, Inc. v. Am. Horse Shows Ass'n, Inc.*, No. 82 Civ. 5691,

*Second*, Plaintiffs inconsistently describe the alleged antitrust violations as a "conspiracy" (Compl. ¶¶ 16, 160, 212-13), as "practices" that "seek to create an illegal monopoly" (Compl. ¶ 203) and as an "agreement" to "create a monopoly" (Compl. ¶¶ 37, 205, 207). These theories of liability are contradictory, with Plaintiffs claiming at times that the conspiracy's goal was to "bring every current and potential plaintiff" under its control so that the MDL Group could "represent to the Court and to defendant Chiquita Brands that no more claims would ever be filed," and at other times that the conspiracy's goal was to agree that no member of the conspiracy would "actively pursue any new claims." *Compare* Compl. ¶¶ 34, 206 *with* Compl. ¶¶ 33, 207. Additionally, at least one of Plaintiffs' conflicting theories – that BSF conspired to create a "shared monopoly" with the Doe Defendants – has been soundly rejected. *City of Moundridge, KS v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 42 (D.D.C. 2007) (stating that "shared monopoly argument is insufficient to state a claim" because Section 2 of the Sherman Act "requires actual or attempted monopolization *by one defendant*") (emphasis added). While Plaintiffs are entitled to plead in the alternative, this muddling of theories and factual allegations fails to put BSF on notice of the actual claims against it or give it a fair opportunity to prepare a defense. *See* Charles Alan Wright and Arthur Miller, Federal Practice and Procedure: Civil § 1282 (3d ed. 2004). ("The right to plead alternatively or hypothetically does not sanction deviations from the basic obligation to plead comprehensibly.").

---

1983 WL 1882, at **3-5 (S.D.N.Y. Sept. 29, 1983) (dismissing lawyer-agent from antitrust suit because he was incapable of conspiring with his principal-client to commit antitrust violations as a matter of law); *Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 53-54 (D.D.C. 2009) (dismissing civil conspiracy claims because defendant cannot conspire with its agents as a matter of law).

2.   *Plaintiffs Fail To Allege Antitrust Standing.*[5]

In order to establish standing to bring an antitrust action, a "plaintiff must establish an injury-in-fact or a threatened injury-in-fact caused by the defendant's alleged wrongdoing." *Andrx Pharmaceuticals, Inc. v. Biovail Corp. Int'l*, 256 F.3d 799, 806 (D.C. Cir. 2001) (citing *Associated Gen. Contractors of Cal., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 535 (1983)). "Moreover, the injury must affect the plaintiff's business or property and must be the kind of injury the antitrust laws were intended to prevent." *Id.* (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Plaintiffs fail to allege an injury-in-fact, let alone an injury of the type that the antitrust laws were intended to prevent.[6]

a.   Plaintiffs Do Not Allege Any Injury-In-Fact.

In order to adequately plead an injury-in-fact, a plaintiff must plead causation. *Andrx*, 256 F.3d at 806. A plaintiff must plead an injury to his business or property caused by the illegal conspiracy. *Id.* The term "business or property" means "commercial interests or enterprises." *City of Moundridge*, 471 F. Supp. 2d at 30.

As a preliminary matter, the Doe Plaintiffs are barred by the Foreign Trade Antitrust Improvements Act of 1982 from bringing any Sherman Act claim regarding purportedly anticompetitive conduct that "causes only foreign injury." *F. Hoffmann-La Roche Ltd. v.*

---

[5] "Although properly treated as a threshold matter, antitrust standing is nonetheless an affirmative element of any antitrust suit brought by a private plaintiff and is assessed on a motion to dismiss according to the Rule 12(b)(6) standard, not that of Rule 12(b)(1) applicable to challenges to constitutional standing." *Sprint Nextel Corp. v. AT & T Inc.*, 821 F. Supp. 2d 308, 312 n.1 (D.C. Cir. 2001).

[6] "Additional factors to be considered in determining whether the plaintiff has 'antitrust standing' include: the directness of the injury, whether the claim for damages is 'speculative,' the existence of more direct victims, the potential for duplicative recovery and the complexity of apportioning damages." *Id.* (citing *Associated Gen. Contractors*, 459 U.S. at 542-45; Adams v. Pan Am. World Airways, Inc., 828 F.2d 24, 26 (D.C. Cir. 1987)). Here, all of these additional factors also point squarely to an absence of antitrust standing, but the Court need not reach them if it finds, as it should, that the threshold antitrust injury itself has not been adequately alleged.

*Empagran S.A.*, 542 U.S. 155, 158 (2004).[7]  Additionally, the Doe Plaintiffs have not alleged any injury to their business or property.  *See* Compl. ¶¶ 203-213 (failing to make any mention or allegation of any harm to the Doe Plaintiffs with respect to the antitrust claim).  The Doe Plaintiffs could not possibly allege any such injury because, at worst, all that has occurred here is that they have had duplicate claims filed on their behalves.  Because the MDL has been stayed and these duplicate claims can be easily resolved well before trial, the Doe Plaintiffs have simply suffered no injury as a result of their filing.

Similarly, Wolf has not pled any injury to his commercial interests – he has alleged only that the *aim* of the purported agreement among the MDL Group was to "restrain [his] trade." Compl. ¶ 205.  Assuming, *arguendo*, that Wolf is alleging some actual injury to his own legal practice as opposed to a mere intent to injure – though it is clear from the face of the Complaint that he is not – he has not provided any information indicating *how* his legal practice has been harmed.  For example, Wolf states that he has brought four civil actions against Chiquita on behalf of the Doe Plaintiffs as well as thousands of others, but does not state that any alleged agreement between BSF and any other member of the MDL Group has impaired his ability to prosecute the claims in those cases.  *See* Compl. ¶ 7.  Furthermore, Wolf asserts that the purpose of the so-called "MDL Agreement" is to bring "every current and potential plaintiff" with viable claims against Chiquita under the MDL Group's control so that it can represent that "no more claims will ever be filed."  Compl. ¶ 34.  Yet, on the very same page of the Complaint where this allegation appears, Wolf also alleges that he himself intends to file more claims, has 500 new

---

[7] There is an exception for conduct that "has a direct, substantial, and reasonably foreseeable effect on domestic commerce."  *F. Hoffmann-La Roche*, 542 U.S. at 159.  Not only is there no "domestic" effect here, but the domestic effect must have proximately caused the foreign injury, which certainly did not happen here either.  *See id.* at 175 (rejecting claim where foreign injury was "independently caused" and domestic effect did not "bring about" the foreign injury).

cases ready to go and that "[o]ther attorneys" who are not members of the MDL Group will "probably" file thousands of new claims as well. Compl. ¶ 34 n.16. Put simply, even if the MDL Group has entered into the agreement that Wolf alleges it has, it could not and has not restricted Wolf or any other lawyers from filing any new claims. Thus, Wolf has not been "restrained" within the meaning of the antitrust laws and cannot demonstrate an injury sufficient to plead antitrust standing.

> b. Even Assuming Plaintiffs Had Properly Alleged An Injury,
> It Is Not The Kind Of Injury That The Antitrust Laws Regulate.

Even if Plaintiffs could somehow demonstrate that they suffered actual harm to their commercial interests caused by BSF's participation in an antitrust conspiracy, they cannot possibly claim that such an injury would be "of the type the antitrust laws were intended to prevent." *Brunswick*, 429 U.S. at 489.

*First*, Plaintiffs falsely equate coordination between MDL Group counsel to a conspiracy in violation of the Sherman Act. Contrary to Wolf's attempt to attach a pejorative meaning to coordination, courts routinely welcome and encourage coordination among plaintiffs' counsel, particularly in large, complex cases such as the Chiquita MDL. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 643 n.4 (E.D. La. 2010) (noting that "the efficient and successful resolution of an MDL is dependent on coordination and cooperation of lead counsel for all sides"); *In re Vernitron Securities Litig.*, 462 F. Supp. 391, 393 (J.P.M.L. 1978) (noting that "voluntary coordination of discovery efforts among parties and their counsel is always commendable"). Plaintiffs' theory, if viable, would expose counsel in virtually all MDL proceedings to liability under the Sherman Act. Unsurprisingly, BSF has not found a single reported case in which a court found the Sherman Act to apply to the coordinated efforts of plaintiffs' counsel in litigation.

*Second*, the Sherman Act was enacted for the "protection of competition, not competitors." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). As Wolf admits in his Complaint, he has had financial difficulties litigating his clients' claims and had been relying on funding from other counsel that has since been terminated. Compl. ¶¶ 19, 34, 36. Wolf has also benefited from coordinated efforts regarding discovery, consolidated motions to prevent inconsistent outcomes and all of the other advantages of the cooperative use of MDLs. However, due to Wolf's own conduct, which threatened the effective and efficient prosecution of claims in the Chiquita MDL (*see* Compl. ¶ 34), the MDL Group collectively decided to stop coordinating with Wolf, deciding that he "would have no more input into the litigation of the case" (*see* Compl ¶ 38). Although Wolf may be disadvantaged and upset as a result of being excluded from the collective efforts of the MDL Group, the Sherman Act simply does not protect competitors. *See Brown Shoe Co.*, 370 U.S. at 320.

*Third*, there is no "market" of plaintiffs with legal claims against Chiquita for human rights violations within the meaning of the antitrust statute. *See Atlantic Exposition Srvs. v. SMG*, 262 Fed. App'x 449, 451-52 (3rd Cir. 2008); *see also* 1 Callmann on Unfair Comp., Tr. & Mono. § 4:31 (4th ed. 2010) (listing examples of markets that are not recognized under the antitrust statute, such as the products of a single manufacturer, the beneficiaries of a single health insurer, or the purchases of a single customer). The alleged agreement between MDL Group counsel, if true, would merely constitute an agreement to refrain from filing individual claims in the MDL and instead registering them as class participants.

Because it is impossible to ascertain from the Complaint (1) what law or legal premise Plaintiffs allege that BSF has violated; (2) who conspired with BSF to commit such violations; (3) what specific agreement was purportedly reached; (4) the purpose of the alleged illegal

agreement; and (5) how that agreement has harmed any of the Plaintiffs, the antitrust claims

against BSF should be dismissed.

**B.** **Plaintiffs Fail To State A Claim For Invasion Of Privacy.**

"Invasion of privacy is not one tort, but a complex of four, each with distinct elements

and each describing a separate interest capable of being invaded." *Wolf v. Regardie*, 553 A.2d

1213, 1216-17 (D.C. 1989). Though Plaintiffs do not identify by name the specific invasion of

privacy torts that BSF purportedly committed, the Complaint appears to be bringing claims for

public disclosure of private facts (*see* Compl. ¶¶ 196-97) and false light (*see* Compl. ¶¶ 198-

200).

1. *Plaintiffs Fail To State A Claim For Public Disclosure Of Private Facts.*

The tort of pubic disclosure of private facts "is generally considered as having five

constituent elements: (1) publicity, (2) absent any waiver or privilege, (3) given to private facts

(4) in which the public has no legitimate concern (5) and which would be highly offensive to a

reasonable person of ordinary sensibilities." *Wolf*, 553 A.2d at 1220. Plaintiffs allege that BSF's

publication of the Doe Plaintiffs' names in its complaints against Chiquita was "an unreasonable

intrusion into [the] Doe Plaintiffs' privacy" and "has put those individuals lives in jeopardy."

Compl. ¶¶ 196-97.[8] According to the Plaintiffs, the confidential information BSF purportedly

published is not the Doe Plaintiffs' individual names, but the fact that they are associated with

litigation against Chiquita. *See id.*

---

[8] Many of Plaintiffs' allegations and purported damages are based on the fact that the Doe Plaintiffs'
names were included in the complaint and amended complaints filed by BSF. *See*, *e.g.*, Compl. ¶¶ 3-4,
169, 175, 182, 195-201. Notably, however, when Wolf initially filed the instant action he published the
Doe Plaintiffs' names himself, and that was one reason for the court's *sua sponte* dismissal of Wolf's
complaint. Kessler Order at 1-2.

a.   Plaintiffs' Public Disclosure Of Private Facts Claim Is Time-Barred.

The "one-year statute of limitations applicable to libel, slander, assault, and other similar torts 'has been applied to invasion of privacy claims in the District of Columbia on the rationale that invasion of privacy is essentially a type of defamation.'"  *Klayman v. Judicial Watch, Inc.*, No. 06 Civ. 670, 2007 WL 1034936, at *3 (D.D.C. Apr. 3, 2007) (quoting *Grunseth v. Marriott Corp.*, 872 F. Supp. 1069, 1074 (D.D.C. 1995)).  BSF filed its first complaint against Chiquita, which allegedly included "claims for the Doe Plaintiffs," on April 14, 2010.  Compl. ¶ 21.  Because the relationship between an attorney and the client he or she represents in a lawsuit is one of agent and principal, "under traditional principles of agency the attorney's knowledge must be imputed to" the client.  *Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) (plaintiff's § 1983 claim deemed time-barred because his attorney knew of injury outside three-year statute of limitations period); *see also Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281, 1287 (Fed. Cir. 2007) ("Knowledge or notice to an attorney acquired during the existence of the relationship of attorney and client, and while acting within the scope of his authority, is imputed to the client.").  Since the Doe Plaintiffs filed the instant action on November 11, 2012, more than two years after Wolf, purportedly the Doe Plaintiffs' counsel, learned that BSF had published their names in the public record, their claim for public disclosure of private facts is time barred.

b.   BSF's Plaintiffs Authorized It To File Suit Using Their Real Names.

In order to state a claim for public disclosure of private facts, the revelation of private facts must also take place in the absence of any waiver or privilege.  *See Wolf*, 553 A.2d at 1220.  Pursuant to the POAs that each of the BSF's plaintiffs signed with the Torrado firm, however, BSF's plaintiffs empowered them "to take all steps deemed by them to be advisable" in conducting the litigation.  Certified POA at 2.  The decision to sue using their real names instead

13

of pseudonyms falls well within this plainly enumerated power, particularly given that the POA

does not provide for or at all contemplate the filing of anonymous claims.  *See id.*

            c.   <u>The Fact That The Doe Plaintiffs Were Suing Chiquita Was Not Private.</u>

Plaintiffs allege that the "confidential information" published by BSF was "the fact that

they are associated" with litigation against Chiquita.  Compl. ¶ 197.  Plaintiffs make no

allegation that they had any expectation of confidentiality, and to the contrary, the POA that was

attached to the Complaint makes no reference to such information being confidential.  *See*

Certified POA.  While Plaintiffs do allege that the publication of such information would

endanger the Doe Plaintiffs, even if the publication of this information did endanger them –

which it most certainly did not – that fact alone would not render the information private or

confidential.  *See*, *e.g.*, Black's Law Dictionary (9th ed. 2009), "confidential"; *see also id.*,

"private."  Likewise, while Plaintiffs allege that "judges associated with the MDL, without

exception, have permitted [ATS cases against Chiquita] to be filed under pseudonyms,"

(Compl. ¶¶ 3-4), the mere fact that judges have "permitted" plaintiffs to file claims under

pseudonyms does not mean that the fact of any Colombian citizen's involvement in litigation

against Chiquita is somehow inherently private or that the filing of such claims in that matter is

necessary.[9]

---

[9] Indeed, several other complaints in the MDL have been filed using plaintiffs' real names as opposed to pseudonyms.  The following cases pending in the Chiquita MDL, *In re Chiquita Brands Int'l, Inc., Alien Tort Statute and Shareholders Derivative Litig.*, No. 08 Civ. 01916 (S.D. Fla. filed Feb. 20, 2008), have been filed using plaintiffs' real names: *Jose Leonardo Lopez Valencia, et al. v. Chiquita Brands Int'l, Inc.*, No. 08 Civ. 80508 (Third Amended Complaint filed June 9, 2008), ECF No. 77; *Antonio Gonzales Carrizosa, et al. v. Chiquita Brands Int'l, Inc.*, No.. 07 Civ. 60821 (Third Amended Complaint filed as exhibit to motion to amend complaint on May 31, 2012, which was granted at ECF No. 556 on Sept. 28, 2012), ECF No. 541; *Sara Matilde Moreno Manjarres, et al.*, No. 08 Civ. 80480 (Seventh Amended Complaint filed Sept. 20, 2012), ECF No. 557.

d.   The Publication Of The Doe Plaintiffs' Names Is Not Highly Offensive.

The tort of pubic disclosure of private facts further requires that the publication "be highly offensive to a reasonable person of ordinary sensibilities." *Wolf*, 553 A.2d at 1220.  Here, Plaintiffs' allegation that the publication of the Doe Plaintiffs' names was highly offensive is based on the danger purportedly resulting from the Doe Plaintiffs' mere association with litigation against Chiquita.  *See* Compl. ¶ 197.  Other allegations in the Complaint, however, contradict that allegation.  To wit, Plaintiffs' allegation that "the Uraba region of Colombia is still extremely violent, and any association with [litigation against Chiquita] could be interpreted as siding with the FARC guerrillas" is entirely belied by the fact that Wolf actually ran public radio ads in the Uraba region announcing "town hall" meetings, one of which was attended by "about 600 of his clients."  Compl. ¶¶ 3, 25.  In addition to hosting large public meetings, Wolf describes his office in Apartado, Asesorias Paul, as a business that has been collecting evidence for the Chiquita case since 2007.  Compl. ¶ 6.  Plaintiffs cannot credibly claim that BSF endangered the Doe Plaintiffs by filing a lawsuit in the United States when Wolf made highly public calls for individuals who were suing Chiquita to gather en masse in what the Complaint alleges is one of the most dangerous regions of Colombia, and he himself keeps an office there whose only purpose is to gather evidence for the case.

2.   *Plaintiffs Fail To State A Claim For False Light.*

In order to establish the privacy tort of false light, a plaintiff must prove "(1) publicity (2) about a false statement, representation or imputation (3) understood to be of and concerning the plaintiff, and (4) which places the plaintiff in a false light that would be offensive to a reasonable person."  *Washburn v. Lavoie*, 437 F.3d 84, 88 n.3 (D.C. Cir. 2006).  Plaintiffs allege that publishing the names of the Doe Plaintiffs has placed those individuals in a false light before the public because the public "may assume that [they] are associated with the FARC guerilla

15

group" because "guilt by association is commonplace in Colombia."  Compl. ¶ 198.  The

Complaint further alleges that a "reasonable person, if made aware of the background to

Colombia's conflict and the nature of this case, would find the publication of Plaintiff's [sic]

names without their knowledge or consent, to be highly offensive."  Compl. ¶ 199.

        a.   Plaintiffs' False Light Claim Is Time Barred.

The one-year statute of limitations applicable to public disclosure of private facts claims

in the District of Columbia also applies to false light claims.  *See Klayman*, 2007 WL 1034936,

at *3.  As such, the statute of limitations argument outlined *supra* at Point I.B.1.a applies to

Plaintiff's false light claim, as well, and bars it as untimely.

        b.   The Published Facts Were Not False.

The defining aspect of any false light claim is that the complained of "statement,

representation or imputation" actually be false.  *Washburn*, 437 F.3d at 88 n.3; *see also*

*Alexander v. Washington Gas Light Co.*, 481 F. Supp. 2d 16, 34-35 (D.D.C. 2006) *aff'd*, No. 06

Civ. 7040, 2006 WL 3798858 (D.C. Cir. Aug. 24, 2006) (overdue debt reported in customer's

consumer credit files was not false, and thus creditors did not present customer in false light by

making report).  Here, the publication of the names of the Doe Plaintiffs in BSF's complaints

only establishes that they had filed claims against Chiquita in the MDL.  *See* Compl. ¶ 197.  This

association is not a false fact; the Doe Plaintiffs are, in fact, suing Chiquita.  Plaintiffs' allegation

that some people may unreasonably "assume that Plaintiffs are associated with the FARC

guerilla group" is completely irrelevant since BSF's complaints did not state or imply any such

association.  Compl. ¶ 198.

c.  The Published Facts Did Not Place The Doe Plaintiffs In A
    <u>False Light That Would Be Offensive To A Reasonable Person.</u>

Plaintiffs' assertion of offensiveness stems from the idea that public association with

litigation against Chiquita will place the Doe Plaintiffs in some sort of physical danger.  As noted

*supra* at Point I.B.1.d, however, such claims are entirely without merit.  Moreover, this

allegation is contradicted by Wolf's own allegations describing his large town hall meetings

attended by hundreds and hundreds of his clients in Colombia.

**C.  <u>Plaintiffs Fail To State A Claim For Tortious Interference With Contract.</u>**

In order to state a claim for tortious interference with contract, a plaintiff must allege

"(1) the existence of a contract, (2) knowledge of the contract, (3) intentional procurement of its

breach by the defendant, and (4) damages resulting from the breach."  *Sorrells v. Garfinckel's,*

*Brooks Bros., Miller & Rhoads, Inc.,* 565 A.2d 285, 289 (D.C. 1989) (citation and quotation

marks omitted).  "A defendant can avoid liability for tortious interference with contract and with

business relations if the defendant can establish that his conduct was legally justified or

privileged."  *Gaujacq v. EDF, Inc.*, 601 F.3d 565, 580 (D.C. Cir. 2010).  The Complaint alleges

that BSF's agents, who were fully aware of the fact that the Doe Plaintiffs had signed POAs with

Wolf, nevertheless contracted with them, intentionally causing them to breach their agreements

with Wolf.  *See* Compl. ¶¶ 172-74.  Plaintiffs further allege that BSF's agents made

misrepresentations to confuse the Doe Plaintiffs into signing POAs and that BSF's tortious

interference has damaged them, with their alleged damages including "the cost and difficulty of

this litigation, the mental distress and physical threat caused by having their names published as

AUC victims, [and] having to go to court once already to give depositions."  Compl. ¶ 175.  The

Complaint also alleges that Wolf was harmed by BSF's tortious interference due to the damage it

caused "to the case as a whole."  Compl. ¶ 175.  At the same time, Wolf inconsistently alleges

that "thirty four of the Plaintiffs deny ever signing any agreement with" the Torrado firm (Compl. ¶ 163), "[m]any of the Plaintiffs in this action claim never to have signed any agreements with Defendants' agents" (Compl. ¶ 168), "Boies Schiller has no privilege to represent persons with whom it has no contractual relationship" (Compl. ¶ 174) and "no attorney-client relationship ever existed between Boies, Schiller Flexner LLP and the Doe Plaintiffs" (Compl. ¶ 177).

As a preliminary matter, it is impossible to determine from the Complaint whether Wolf is alleging that the Doe Plaintiffs did or did not retain BSF and how these convoluted allegations fit in with his tortious interference claim. For example, Wolf offers no explanation as to how the 34 Doe Plaintiffs that allegedly did not sign any agreements with Torrado could have possibly breached their contracts with him. *See* Compl. ¶ 163. Similarly, if Wolf believes that the POAs that some Doe Plaintiffs admittedly executed with the Torrado firm are invalid, then there was no breach of any contract on behalf of those Doe Plaintiffs and Wolf continues to represent them, as he has always has. If Wolf believes that the POAs some Doe Plaintiffs executed with the Torrado firm are valid, then the language of those POAs allow the Doe Plaintiffs to terminate the representation by written notice to the Torrado firm at any time.[10] As a practical matter, instead of subjecting the Doe Plaintiffs to the time and expense of providing depositions as alleged in the Complaint, Wolf could have simply assisted the Doe Plaintiffs in preparing letters to the Torrado firm requesting a termination of the representation. Compl. ¶ 175.

---

[10] BSF does in fact have a contractual relationship with every single individual in whose name it has sued Chiquita, as all of these individuals have signed POAs with the Torrado firm regarding the prosecution of those claims and empowering Torrado to associate with co-counsel and to "delegate" to them any "litigation in foreign courts." Certified POA at 1. Because Torrado has delegated the prosecution of these individuals' claims in the United States federal court to BSF, BSF's conduct in filing its April 2010 complaint and all subsequent amended complaints on their behalf was legally justified. *See Gaujacq v. EDF, Inc.*, 601 F.3d at 580.

*1.  Neither BSF Nor Torrado Knew Of Wolf's Contracts With The Doe Plaintiffs.*

Plaintiffs' repeated allegations that BSF or Torrado knew that any of the individuals with whom they contracted had a pre-existing attorney-client relationship with Wolf, either when first contracting with those individuals or later, when BSF filed amended complaints against Chiquita, are simply incorrect.  *See, e.g.*, Compl. ¶¶ 1, 173-74.  *First*, the explicit contractual language of the POA that Wolf attached to the Complaint makes clear that every plaintiff signing such a document necessarily warranted in writing that he or she had "not granted any power of attorney to another attorney" for the purpose of suing Chiquita for providing material support to the AUC. Certified POA at 2.  This documentary evidence, coupled with the fact that Wolf has filed all four of his complaints against Chiquita under pseudonyms (*see* Compl. ¶ 3), makes clear that Torrado and BSF had no knowledge of any of Wolf's purported contracts with the Doe Plaintiffs at the time the retainer agreements were signed.[11]

*Second*, Plaintiffs' allegations that BSF had actual knowledge that the Doe Plaintiffs were already represented by Wolf when BSF filed amended complaints, is not relevant to the tortious interference claim because, even if true, it would not establish knowledge at the requisite time. Wolf's allegation that in June 2011, more than a year after BSF filed its first complaint in April 2010, that he sent BSF a spreadsheet and an email purporting to identify overlapping clients, is insufficient to establish knowledge.  *See* Compl. ¶¶ 23-24, 39.  Conspicuously absent from the Complaint is any allegation that Wolf ever provided BSF with the dates on which he purportedly signed his POAs with the Doe Plaintiffs.  Nor does the Complaint allege that Wolf ever provided

---

[11]  In his tortious interference claim, Wolf also makes the conclusory allegation that "Jhon Ivan Polo and his assistants were aware of this contractual relationship."  Compl. ¶173.  However, he does not provide any further support for that factual allegation, and instead seems to assume that everybody in the Uraba region of Colombia should know that all potential plaintiffs with claims against Chiquita were Wolf's clients.

BSF with any actual evidence supporting his claims of prior representation of any BSF clients. Both the spreadsheet Wolf transmitted to BSF in June 2011 and the email he sent in May 2012 were disorganized spreadsheets that listed the names of a number of BSF's clients – names that anyone could have pulled off of any of BSF's publicly available complaints – without indicating the date on which Wolf purportedly contracted with each of the listed individuals.  *See* Compl. ¶ 24.[12]  Indeed, to this day, Wolf has never provided BSF with any documentary evidence indicating that he represents any clients in whose names BSF has filed claims against Chiquita. BSF does not even know the identities of the Doe Plaintiffs, and has never been provided with the declarations those individuals allegedly signed in which they purportedly state that they did not intend to sign retainer agreements with Torrado and instead want Wolf to represent them.

> 2. *Neither BSF Nor Its Agents Intentionally Procured The Breach*
> *Of Wolf's Purported Contracts With The Doe Plaintiffs.*

In order to state a claim for tortious interference with contract, a plaintiff must allege that a contract was in fact breached and that the defendant intentionally procured such breach.  *See Sorrells,* 565 A.2d at 289.  Plaintiffs allege that the contracts between Wolf and the Doe Plaintiffs were breached both "by filing duplicate claims" and by "Boies Schiller's continued representation" of them.  Compl. ¶ 174.  The Complaint, however, fails to allege either that Wolf's purported contracts with the Doe Plaintiffs were actually breached or that BSF intentionally procured the breach of those purported contracts.

---

[12]   Although Wolf also alleges that in October 2011, all MDL Group counsel sent their client data to John Hopkins of SDSBS, who then attempted to run a conflicts check based on client data, including the dates each law firm signed retainer agreements, that allegation just establishes more confusion on the duplicate claims.  Compl. ¶ 29.  In fact, Wolf alleges that the "Hopkins Report" shows 88 cases of overlap between Wolf and BSF but that his own "manual comparison" showed nearly double that amount, 149 duplicate claims.  Compl. ¶ 29.  Wolf does not allege that the Doe Plaintiffs were actually listed in the Hopkins Report, does not provide any explanation for the discrepancy and does not attempt to clear up that discrepancy.  Given the contradictions in the two comparisons alleged, it is obvious that a definitive and complete de-duplication has never been accomplished among BSF, Wolf or the rest of the MDL Group.

*First*, Wolf still claims to represent all but five of the Doe Plaintiffs in litigation against Chiquita.  Compl. ¶¶ 1 & n.1 (noting that the only five of the Doe Plaintiffs who are not "already represented" by Wolf in litigation against Chiquita nevertheless "desire[]" to be represented by him), 54.  Moreover, Wolf purports to represent all of the Doe Plaintiffs in the instant lawsuit against BSF.  Compl. ¶ 53 ("Paul Wolf is the attorney for the other Plaintiffs in this case.").  Thus, it does not appear that his contracts with the Doe Plaintiffs were actually breached.

*Second*, Plaintiffs have not alleged precisely how any agreement is breached by BSF's alleged filing of duplicate claims or its continued representation of the Doe Plaintiffs, particularly given that Wolf has not withdrawn any of the claims that he has filed on their behalf and that BSF never requested that he do so.  Moreover, Wolf acknowledges that the "general consensus" of the MDL Group "was that the first lawyer to obtain power of representation would represent that person unless there was evidence that the individual wanted to change attorneys."  Compl. ¶ 23.  Thus, rather than a breach of any contract with Wolf, the Doe Plaintiffs' signing of POAs with BSF appears to merely be evidence their desire to change attorneys.  Likewise, under the POA signed with the Torrado firm, the Doe Plaintiffs can easily terminate their contractual relations and opt to have Wolf represent them.  Certified POA at 2.

*Third*, as explained *supra* at Point I.C.1, even if this Court found that Wolf's contracts with the Doe Plaintiffs were breached – which they were not – the fact remains that neither BSF nor Torrado knew of Wolf's purported contracts with the Doe Plaintiffs.  BSF cannot be said to have *intentionally* procured the breach of contacts that it did not know existed.  *See Sorrells,* 565 A.2d at 289.

### 3. Neither The Doe Plaintiffs Nor Wolf Suffered Any Damage As A Result Of The Doe Plaintiffs Signing POAs With BSF.

Wolf fails to allege any actual damages or any theory of damages that he has suffered as a result of the alleged tortious interference, and other than arguing very broad theories of speculative damages to the Doe Plaintiffs and virtually every party that is involved in the MDL case, Wolf does not set forth any plausible theory of damages to the Doe Plaintiffs.  Wolf's attempt to allege damages is a confusing litany of far-reaching claims that the alleged actions by BSF pertaining to 98 individuals – in a case involving more than six thousand plaintiffs – has resulted in "damage to the case as a whole."  Compl. ¶ 175.  Although he is not bringing claims on their behalf, Wolf alleges that the alleged tortious interference has caused damages to "all plaintiffs in the Multi District Litigation against Chiquita Brands," damages to the "[t]housands of people in the Uraba region" that "now have to worry about unethical law firms filing claims in their name," and apparently all of "Wolf's other clients" as well.  Compl. ¶ 175.  At this early stage in the litigation, Wolf cannot credibly allege that the Doe Plaintiffs have already suffered any damage or harm.  Wolf admits this inability to allege any actual damages by stating in his cause of action for tortious interference that "malpractice damages are impossible to calculate at this time, since Plaintiffs have not yet lost their cases."  Compl. ¶ 175 & n.21.[13]  Moreover, Plaintiffs allege that "Wolf is confident" that Judge Marra "will not punish these poor widows and orphans" for the conduct in which they allege that BSF has engaged, which contradicts any claim that the case as a whole has been damaged.  Compl. ¶ 44.

---

[13] Indeed, in his December 3, 2012 Notice and Memorandum of Law in Opposition to Transfer to the Southern District of Florida (the "Transfer Opposition"), Wolf even goes so far as to state that determining "damages would be impossible at this stage of the case" against Chiquita because such damages, which he describes as a mere "side issue" in the instant litigation, "will not be known until after trial," which "is years away."  Transfer Opp. at 6, 9, 11, 13.

**D. Plaintiffs Fail To State A Claim For Fraud.**

In order to prove fraud in the District of Columbia one must show "(1) a false representation[,] (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Howard Univ. v. Watkins*, 857 F. Supp. 2d 67, 75 (D.D.C. 2012) (quoting *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1074 n.22 (D.C. Cir. 2008)). It is also a "well-settled rule" in D.C. that fraud requires proof of damages as an element of the claim. *Mariner Water Renaturalizer of Washington, Inc. v. Aqua Purification Sys., Inc.*, 665 F.2d 1066, 1069-71 (D.C. Cir. 1981). Damages cannot be "uncertain, contingent, or speculative." *Stovell v. James*, 810 F. Supp. 2d 237, 248 (D.D.C. 2011) (court dismissed fraud claims because alleged "commercial opportunities" that plaintiff missed as a result of fraud were "wholly speculative"); *see also In Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792-93 (D.C. Cir. 1983) (damages are "restricted in all cases to such damages as were the natural and proximate consequences, or the direct consequences, of the fraud, and to such damages as can be clearly defined and ascertained." (citation and quotation marks omitted)). Federal Rule of Civil Procedure 9(b) further requires a plaintiff alleging fraud to plead with particularity "the time, location and content of the false misrepresentations, the misrepresented fact and what was gained or lost as a result of the fraud." *Howard Univ.*, 857 F. Supp. 2d at 75 (citation omitted). Plaintiffs allege generally that the Doe Plaintiffs were misled about the nature of the documents that they signed with the Torrado firm, which effectively authorized BSF to represent these individuals even though they had already signed retainer agreements with Wolf and wanted Wolf as their attorney. *See* Compl. ¶¶ 8-18.

### 1.  *Plaintiffs Fail To Plead Knowledge of Falsity.*

The fraud claim fails because Plaintiffs fail to allege knowledge of falsity.  *First,* if the Doe Plaintiffs actually executed POAs with Torrado, then they each represented explicitly and in writing that they had "not granted any power of attorney to another attorney, for the same purpose that I have stated in this document."  Certified POA at 2.

*Second*, not only do Plaintiffs fail to allege knowledge of falsity, they even go so far as to contradict the inference of knowledge when they claim that BSF could not have known which of the Doe Plaintiffs were already Wolf's clients because Wolf had filed his previous complaints under pseudonyms.  *See* Compl. ¶ 24 ("Wolf thought that since he had filed under pseudonyms, Defendant not have known [sic] it was filing duplicate claims.").

*Third*, Plaintiffs continue to contradict their fraud allegations by stating that Wolf raised the issue of duplicate claims with BSF attorneys, and had ongoing discussions with them from June to August of 2011, and that there was a "general consensus" among the MDL Group that the first lawyer to obtain power of representation would represent that person unless there was evidence that the individual wanted to change attorneys.  Compl. ¶ 24.  Put simply, all Wolf needed to do was put forward evidence to BSF that he had earlier POAs with any of BSF's clients in order to demonstrate a proper claim to those clients.  Nowhere in the Complaint is it alleged that this was ever done.[14]

### 2.  *Plaintiffs Fail To Plead Damages.*

Plaintiffs have not alleged any harm other than vague assertions of completely speculative damages.  *See*, *e.g.*, Compl. ¶ 169.  Moreover, if any Doe Plaintiff does not want

---

[14] The Complaint does allege that "in a gesture of good faith," Wolf sent a spreadsheet to BSF containing the names of those of clients on whose behalf BSF had filed claims.  Compl. ¶ 24.  However, Wolf does not allege that this spreadsheet contained the dates on which he purported to have contracted with the listed individuals or that he sent BSF any supporting evidence – such as dated copies of power of attorney agreements – to verify the spreadsheet's naked assertion of dual representation.

BSF to be his or her representative in litigation against Chiquita, each POA explicitly authorizes them to make their desire to change attorneys known in writing, which none of the Doe Plaintiffs have done either personally or through Wolf as their alleged attorney.  *See* Certified POA at 2 ("I understand that I can terminate my attorneys' representation of me at any time, by providing written notice to all of my attorneys at the address of HELÍ ABEL TORRADO & ASOCIADOS, COMPAÑÍA TORRÁS, S.A.'s main office.").  The address of the Torrado firm's main office is conspicuously printed at the top of the POA.  *Id.* at 1.  The Doe Plaintiffs' fraud damages are therefore fully contingent on an action entirely within their control and, as a result, their fraud claims must fail.  *See Stovell*, 810 F. Supp. 2d at 248 (explaining damages cannot be "uncertain, contingent, or speculative").

### E.   <u>Plaintiffs Fail To State A Claim For Negligence.</u>

Plaintiffs' fourth cause of action alleges that BSF is liable for negligence.  Plaintiffs jam two distinct theories of negligence into one claim.  *First*, Plaintiffs allege that BSF violated the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd-1, *et seq.*, which they claim constitutes negligence per se.  Compl. ¶¶ 189-190.  *Second*, Plaintiffs assert that BSF is liable for negligently hiring and supervising the work of a legal professional in Colombia, whom Plaintiffs characterize as "unfit, incompetent or unethical."  Compl. ¶¶ 190-193.  Because Plaintiffs' inflammatory allegations are baseless and fail to demonstrate a cognizable claim for negligence, the Court should dismiss Plaintiffs' fourth cause of action.

### 1.   *The Foreign Corrupt Practices Act Is Not Concerned With Safety And <u>Cannot Form The Basis Of A Negligence Per Se Claim As A Matter Of Law.</u>*

Plaintiffs begin their negligence cause of action with the incendiary claim that BSF is criminally liable for violating the FCPA.  Compl. ¶ 189.  Plaintiffs next make the extraordinary assertion that BSF's criminal liability translates into civil liability under the doctrine of

negligence per se.  Compl. ¶ 190.  Even accepting Plaintiffs' audacious allegations as true for the

purposes of this motion to dismiss, Plaintiffs' allegations fail to state an FCPA violation and their

theory of negligence per se is patently unsupportable under District of Columbia law.

Although there is no civil cause of action for a FCPA violation *J.S. Serv. Ctr. Corp. v.

General Elec. Technical Servs. Co.*, 937 F. Supp. 216, 226-27 (S.D.N.Y. 1996), Plaintiffs do not

even attempt to allege the basic elements of an FCPA violation.  Plaintiffs only allege, as pure

conjecture, that Jhon Ivan Polo was "an official of the Colombian government" and was also

hired by the Torrado firm.  Compl. ¶ 8.  And then later allege, again with no apparent basis, that

it "is inconceivable that Mr. Polo would put his government job at risk and hire assistants if he

were not being compensated."  Compl. ¶ 189.  Plaintiffs do not allege any purported improper

business motive, which is another element of the FCPA.  Furthermore, in order to sustain a

conviction the government must prove beyond a reasonable doubt that defendants both corruptly

and willfully violated the FCPA.  *United States v. Kay*, 513 F.3d 432, 446 (5th Cir. 2007) ("*Kay

II*").[15]  If a private citizen could even allege an FCPA violation – which it cannot – the private

citizen would need to plead facts that show the defendant acted with the heightened mens rea

requirement in the FCPA.  Yet, Plaintiffs nowhere allege that BSF had knowledge of Jhon Ivan

Polo's alleged status as a government employee, let alone that BSF intended that Polo's status as

a government employee would help BSF accomplish "an unlawful end or result."  *Kay II*, 513

F.3d at 446.  To the contrary, Plaintiffs admit that they do not know the "exact nature" of the

---

[15] "Corruptly" means an act that is "done voluntarily and intentionally, and with a bad purpose or evil
motive of accomplishing either an unlawful end or result, or a lawful end or result by some unlawful
method or means." *Id.*  "Willfully" means a defendant "must have acted intentionally—not by accident or
mistake." *Id.* (noting that the FCPA does not define "willfully" and that the common law is an
appropriate source for interpretation of this term); *see also Stichting Ter Behartiging Van de Belangen
Van oudaandeelhouders In Het Kapitaal Van Saybolt Int'l*, 327 F.3d 173, 180-83 (2nd Cir. 2003)
(defining "corruptly" to mean, in addition to the "general intent" present in most criminal statutes, "a bad
or wrongful purpose and an intent to influence a foreign official to misuse his official position.").

relationship between BSF and Mr. Polo, and so could not possibly allege such knowledge or be entitled to an inference to this fact.  Compl. ¶ 189 ("Plaintiffs are unaware of the exact nature of the relationship between Mr. Polo and Boies Schiller Flexner LLP").

In any event, an FCPA violation could not constitute negligence per se under any established legal principle.  The FCPA is a criminal statute that Congress enacted to curb "widespread bribery of foreign officials by United States business interests." *United States v. Kay*, 359 F.3d 738, 746 (5th Cir. 2004) ("*Kay I*").  The statute prohibits, *inter alia*, payments to foreign officials designed to obtain for the payor an improper business advantage.  15 U.S.C. § 78dd-2(a)(1).  Under the doctrine of negligence per se, "where a particular statutory or regulatory standard is enacted to protect persons in the plaintiff's position or to prevent the type of accident that occurred, and the plaintiff can establish his relationship to the statute, unexplained violation of that standard renders the defendant negligent as a matter of law." *Ceco Corp. v. Coleman*, 441 A.2d 940, 945 (D.C. 1982).  For the doctrine to apply, the statute must set forth *specific* obligations owed by one individual to another.  *See Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 558-59 (D.C. Cir. 1993).

Plaintiffs misconstrue the entire purpose of the negligence per se doctrine: To establish presumptive evidence that the violation of a statute imperiled another's safety.  *See, e.g., Mahnke v. Washington Metro. Area Transit Auth.*, 821 F. Supp. 2d 125, 139-40 (D.D.C. 2011) (noting that negligence per se has applied in cases involving traffic regulations and housing codes in buildings); *Saba v. Compagnie Nationale Air France*, 78 F.3d 664, 670 n.5 (D.C. Cir. 1996) (associating the violation of a safety statute with negligence per se).  Even where a statute that generally concerns safety has been violated, courts do not necessarily apply negligence per se.  *Joy*, 999 F.2d at 558-59 (rejecting an argument that violation of statute requiring a pilot to fly at

27

a minimum altitude that would permit an emergency landing constituted negligence per se).  The
FCPA, of course, bares no relation at all to safety.[16]  Plaintiffs' allegation that they were
defrauded by a Colombian official does not remotely allege an FCPA violation and is by no
means the type of harm contemplated by the doctrine of negligence per se.  As a result,
Plaintiffs' negligence per se argument must fail.

> 2.   *The Plaintiffs Insufficiently Allege Negligent Hiring And Supervision.*

Plaintiffs also allege that BSF was negligent in its hiring and supervision of Polo.
Compl. ¶¶ 192-93.  Specifically, Plaintiffs assert that BSF contracted with the Torrado firm,
which, in turn, hired Polo, then an employee of the Colombian government.  Compl ¶¶ 8, 159,
189.  Pursuant to this agreement, Plaintiffs claim that Polo solicited Wolf's clients on behalf of
BSF.  Compl. ¶¶ 9, 173-74, 189.  Accepting these unfounded allegations as true for purposes of
this motion to dismiss, Plaintiffs are plainly unable to maintain a cause of action for negligent
hiring and supervision.

A claim for negligent hiring or supervision exists where the plaintiff suffered harm and
the "employer knew or should have known its employee behaved in a dangerous or otherwise
incompetent manner, and that the employer, armed with that actual or constructive knowledge,
failed to adequately supervise the employee."  *Phelm v. City of Mount Rainer*, 805 A.2d 930,
937-38 (D.C. 2002) (citations and quotation marks omitted).  As with any negligence cause of
action, the plaintiff has the burden of establishing the applicable standard of care, a violation of
this duty, and a causal relationship between the violation and the harm.  *See Tarpeh-Doe v.
United States*, 28 F.3d 120, 123 (D.C. Cir. 1994).  Under these requirements, Plaintiffs' claim for
negligent hiring and supervision is not properly alleged.

---

[16] BSF was unable to locate a single reported decision that found a violation of the Foreign Corrupt
Practices Act to constitute negligence per se.

*First*, Plaintiffs have not demonstrated that BSF owed them any duty.  Plaintiffs'
allegation that a duty arose from "filing a complaint in the Doe Plaintiffs['] names," as well as a
duty owed to "the Court and to the New York Bar," is opaque, contradicted by the Complaint's
repeated claims that BSF does not actually represent the Doe Plaintiffs and insufficient to
support the existence of a duty for a claim of negligent hiring and supervision.  Compl. ¶ 191;
*see also* Compl. ¶¶ 17 ("Defendant has no power of representation over any of these individuals'
cases"), 43 ("Defendants continue to falsely represent themselves to the Court as attorneys of the
Doe Plaintiffs"), 166 (alleging that BSF knows "full well that they are not" the Doe Plaintiffs'
attorneys), 168 ("Defendants know, or should know, that they do not have valid power of
representation for the Plaintiffs in this action."), 169 ("Plaintiffs were damaged by having a
hostile law firm, which does not represent them, holding themselves out as their attorneys"), 174
("Boies Schiller has no privilege to represent persons with whom it has no contractual
relationship"), 177 (claiming that "no attorney-client relationship ever existed between Boies
Schiller Flexner LLP and the Doe Plaintiffs" and that BSF knew "it had no power of
representation" over the Doe Plaintiffs), 197 ("Defendant has no relationship with Doe Plaintiffs
or privilege to publish this confidential information."), 215(b) (asking the Court to "declare that
Paul Wolf represents the co-Plaintiffs in this action, and that Defendant does not").

*Second*, even assuming these various contrived duties are legally viable, the complained
of conduct – fraudulently retaining the Doe Plaintiffs as clients – occurred *before* BSF filed
litigation on their behalf, which, according to Plaintiffs, is when these duties arose.  Therefore,
BSF could not have breached any duty at the time it purportedly engaged in the allegedly
negligent conduct.

*Third*, Plaintiffs brazenly allege that Polo was "unfit, incompetent or unethical" in the practice of law.  Compl. ¶ 192.  However, a pleading must do more than provide "labels and conclusions" to state a claim for relief.  *Twombly*, 550 U.S. at 555.  The only fact Plaintiffs provide to credit their conclusory characterization of Polo is an unsupported footnote in which Plaintiffs claim that Colombian law prohibits government employees "from having any businesses on the side."  Compl. ¶ 189 n.22.  This bald allegation, of course, provides no evidence that Polo was unfit, incompetent, or unethical in the practice of law.

*Fourth*, much like with Plaintiffs' other claims, Plaintiffs have not alleged how they were actually damaged as a result of Polo's conduct.

Accordingly, Plaintiffs' meritless negligence claim should be dismissed.

**F.   Plaintiffs Fail To State A Claim For Malpractice.**

The Doe Plaintiffs allege that BSF committed legal malpractice by filing claims against Chiquita on behalf of the Doe Plaintiffs even though BSF knew that it did not represent them. *See*, *e.g.*, Compl. ¶ 177.  In support of this claim, the Doe Plaintiffs – through Wolf, their legal counsel in this filing – proffer absolutely defamatory, incendiary and baseless allegations predicated on fanciful facts and conclusory assertions of law.  Compl. ¶¶ 179-87.  Wolf irresponsibly and frivolously alleges the violation of no fewer than *twelve* ethical rules. Compl. ¶¶ 179-86.  Focusing on the elements of a claim for legal malpractice, it is clear that the Doe Plaintiffs have no claim.  Therefore, the Court should dismiss the Doe Plaintiffs' third cause of action for legal malpractice.

In order to establish a claim for legal malpractice under District of Columbia law, the plaintiff must show that "1) there is an attorney-client relationship; 2) the attorney neglected a reasonable duty and 3) the attorney's negligence resulted in and was the proximate cause of a loss to the client."  *Mawalla v. Hoffman*, 569 F. Supp. 2d 253, 256 (D.D.C. 2008) (citing *Chase*

30

*v. Gilbert*, 499 A.2d 1203, 1211-12 (D.C. 1985)).  The Doe Plaintiffs can satisfy none of these elements.

"Before a lawyer can have a duty to a client, there must be an attorney-client relationship."  *Hinton v. Rudasill*, 624 F. Supp. 2d 48, 53-54 (D.D.C. 2009) *aff'd*, 384 F. App'x 2 (D.C. Cir. 2010) (dismissing malpractice claims for failure to state a claim upon which relief may be granted where no attorney-client relationship existed).  While BSF does, in fact, have an attorney-client relationship with all of the individuals on whose behalf it has filed claims against Chiquita, Plaintiffs' own allegations prove their undoing with regard to their malpractice claim, as they explicitly allege – in their malpractice cause of action, no less – that "no attorney-client relationship ever existed between [BSF] and the Doe Plaintiffs."  Compl. ¶ 177; *see also* Compl. ¶¶ 17, 43, 166, 168, 169, 174, 197.

To satisfy the second element of a malpractice action, the Doe Plaintiffs must show that BSF neglected a reasonable duty.  The Doe Plaintiffs, who deny that BSF represents them, allege that a defendant "owes a duty of care to people it purports to represent in court.  This duty was breached by Boies Schiller when it filed claims for these individuals, knowing it had no power of representation."  Compl. ¶ 177.  This allegation, even if accepted as true for the purposes of this motion, is nonsensical and illogical.  If BSF does not represent the Doe Plaintiffs, filing a claim on their behalf cannot constitute "neglecting" a reasonable duty.  If the Doe Plaintiffs did sign POAs and retain the Torrado firm, then the filing of the complaint on their behalf by BSF was proper and explicitly contemplated by the POA, and therefore also cannot be "neglecting" a reasonable duty.

As to the requirement that "the attorney's negligence resulted in and was the proximate cause of a loss to the client," *Mawalla*, 569 F. Supp. 2d at 256, the Complaint readily

acknowledges that "malpractice damages are impossible to calculate at this time, since Plaintiffs have not yet lost their cases." Compl. ¶ 175 n.21. Indeed, the Doe Plaintiffs' claim for malpractice must be dismissed because a claim for malpractice normally does not accrue until the trial of the underlying action. *Wagner v. Sellinger*, 847 A.2d 1151, 1156 (D.C. 2004). As the court in *Wagner* explained:

> If that potential is not realized until later – if its occurrence depends on a contingent or future event – then the injury is not sustained until the contingent or future event occurs. Typically, therefore, a potential – not actual – injury has occurred when a client claims that an attorney has mishandled a lawsuit still in progress by failing to take appropriate discovery or by making some other error that, however egregious, does not conclude the lawsuit. That is to say, until the lawsuit is resolved (either by verdict or ruling in court or by settlement), the injury remains uncertain or inchoate.

*Id.* at 1156 (citations and quotation marks omitted). Moreover, the allegations in the malpractice cause of action all rest on the same allegations as the Doe Plaintiffs' claims for fraud, negligence and tortious interference. *See* Compl. ¶¶ 177-87. Because Plaintiffs fail to adequately allege any of these causes of action, as argued above at Points I.C-E, the Doe Plaintiffs' malpractice claim must fail as well. *See Macktal v. Garde*, 111 F. Supp. 2d 18, 23 (D.D.C. 2000) *aff'd*, No. 00 Civ. 7207, 2001 WL 238170 (D.C. Cir. Feb. 23, 2001) (dismissing contract, fraud, tortious interference with judicial remedy, negligence and breach of fiduciary duty claims as related to meritless malpractice claims).

## CONCLUSION

For the foregoing reasons, defendant Boies, Schiller & Flexner, LLP respectfully requests that this Court dismiss it from this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Dated: February 4, 2013
       Washington, D.C.

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

_____/s/ *Douglass A. Mitchell*_____
Douglass A. Mitchell, Bar No. WI0029
BOIES, SCHILLER & FLEXNER LLP
300 South Fourth Street, Suite 800
Las Vegas, Nevada 89101
Phone: (702) 382-7300
Fax: (702) 382-2755
dmitchell@bsfllp.com

David R. Boyd, Bar No. 225359
BOIES, SCHILLER & FLEXNER LLP
5301 Wisconsin Avenue, N.W., Suite 800
Washington, D.C. 20015
Phone: (202) 237-2727
Fax: (202) 237-6131
dboyd@bsfllp.com

*Attorneys for Defendant*
*Boies, Schiller & Flexner LLP*

*Of Counsel*
Nicholas A. Gravante Jr.
Lee S. Wolosky
Magda Jimenez Train
Stephen Kyriacou, Jr.
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022