UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-MD-01916-KAM

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

This Document Relates to:
_____/
Case No. 13-80146-CIV-MARRA

DOES 1-98, Araba, Columbia and PAUL WOLF,
    Plaintiffs,

vs.

BOIES SCHILLER & FLEXNER, LLP and
DOE DEFENDANTS 1 – 8,
    Defendants.
_____/

Case No. 10-60573-CIV-MARRA

Angela Maria Henao Montes et al. ,
    Plaintiffs,

vs.

Chiquita Brands International, Inc. et al.,
    Defendants.
_____/

ORDER ON DEFENDANT BOIES SCHILLER & FLEXNER, LLP'S
RULE 12(B) MOTIONS TO DISMISS COMPLAINT IN CASE NO. 13-80146
and
ORDER SETTING EVIDENTIARY HEARING ON
ATTORNEY REPRESENTATION CONFLICT ISSUE BETWEEN
ATTORNEY PAUL WOLF AND BOIES SCHILLER & FLEXNER, LLP
IN *MONTES v. CHIQUITA BRANDS INT'L, INC*., CASE NO. 10-60573

**THIS CAUSE** involves a dispute over client representation between certain of the plaintiffs' attorneys for the more than six thousand Columbian plaintiffs who are pursuing

various common law tort and statutory claims in this MDL litigation against defendants Chiquita Brands International, Inc. and Chiquita Fresh North America, LLC (cumulatively "Chiquita") and numerous Chiquita executive management members.  The thrust of the underlying tort claims is that Chiquita -- seeking to protect its economic interests by suppression of labor unrest in the banana-growing regions of Columbia -- funded a known violent terrorist organization and was complicit in the torture and killing of thousands of banana-plantation unionists, political organizers, social activists and other Colombian civilians in these regions during the 1990s and early 2000s.

In the first-referenced case captioned above (Case No. 13-80146),  Attorney Paul David Wolf ("Wolf"), acting on his own behalf and on behalf of Does 1 – 98, Araba, Columbia, sues Boies Schiller & Flexner, LLP ("Boies Schiller"), one of the several law firms engaged in the representation of  numerous  Columbian plaintiffs in the  underlying  Alien Tort Statute (ATS) litigation.  Wolf contends that Boies Schiller fraudulently usurped Does 1 - 98 as clients and brought litigation on their behalf, without proper authorization, and without using protective pseudonyms in the matter of *Henao Montes v. Chiquita Brands International,* Case No. 10-60573-Civ-Marra.   According to Wolf, prior to Boies Schiller's inclusion of this group in the *Montes* litigation, he had already initiated suit on their behalf in one of the four (otherwise unidentified) ATS actions previously filed in this MDL proceeding.

Against this background, Wolf, acting on his own behalf and on behalf of Does 1-98, filed suit in Case No. 13-80146 seeking a declaratory judgment that Boies Schiller is not authorized to represent Does 1- 98, and that Wolf is the authorized legal representative of this group.  He also seeks an injunction prohibiting Boies Schiller from taking any further legal action on behalf of Does 1- 98 in this MDL proceeding.  In addition, he asserts claims on behalf

2

of Does 1-98 for fraudulent inducement to contract; tortious interference with contract; malpractice; negligence; invasion of privacy and conspiracy to violate federal antitrust laws. Finally, Wolf asserts individual claims on his own behalf for tortious interference with contract, negligence and conspiracy to violate antitrust laws.

In the conspiracy count, Wolf alleges that Boies Schiller and other unidentified plaintiffs' law firms involved in this proceeding created an illegal monopoly over legal services for Columbian citizens injured by Chiquita by agreeing not to file any new individual claims in this MDL litigation, but to instead simply "register" any new clients brought in after October 31, 2011 as potential "class members" in a future class action. Wolf alleges that this "MDL Agreement" called for each firm to incorporate identical material terms and contingency fee provisions in its retainer agreements, with the participants agreeing to divide equally fees generated by any new cases, and with an undefined additional amount to be awarded to the firm which signed a contract with the client.

According to Wolf, the MDL Agreement was ostensibly designed to cap the number of litigants as a vehicle for increasing the net recovery of each existing plaintiff, but had the practical effect of decreasing attorney competition and increasing fee recovery for the existing lawyers prosecuting the litigation. Wolf contends that the MDL Agreement consequently operates as a restraint of trade of Wolf and other plaintiffs' attorneys seeking to generate new claims. It also allegedly restricts potential claimants' access to legal providers and increases the profits of MDL Agreement participants by reducing the competition for legal services in the relevant legal market.

The case is now before the court on Boies Schiller's motion to dismiss for lack of subject matter jurisdiction [DE 602 – Case No. 08-MD-1916] [DE 20- Case No. 13- CIV-80146] on

ground that the claims are not constitutionally ripe for adjudication because they depend on uncertain future events, and for lack of complete diversity between the parties. Boies Schiller has alternatively moved to dismiss all claims for failure to state a claim on which relief may be granted [DE 624- Case No. 08-MD-1916] [DE 9- Case No. 13-CIV-80146].

## I. Background

According to plaintiffs' complaint, in the latter part of November, 2009, Boies Schiller employed the Colombian entity of Heli Abel Torrado y Associados, SA ("Torrado") to facilitate interviews with hundreds of potential plaintiffs for the Chiquita MDL litigation. Torrado, in turn, employed a Colombian attorney named Jhon Ivan Polo ("Polo"). At the time, Polo was also an official of the Columbian government working in Apartado, Columbia as the manager of the office of Accion Social, an agency of the Columbian government.

Polo allegedly met with hundreds of potential plaintiffs, including fifteen of the Doe Plaintiffs in this case who were already represented by Wolf in lawsuits which he had previously initiated on their behalf. Polo allegedly misled this group to believe that he could assist them in applying for Accion Social relief benefits, and on this pretense obtained signed general powers of attorney authorizing Torrado to take legal action on their behalf. Forty-two of the Doe plaintiffs separately met with Boies Schiller's Columbian agents at the Municipal Building of Apartado, or the "Ciudadela," where they were told either that Wolf had either abandoned or lost their case, requiring them to start over, or that the persons presenting new power of attorney documents actually worked for Wolf. Some of this group signed the agreements presented by Torrado, relying on the alleged misrepresentations, while others deny signing any agreements. According to the complaint, none of the Doe plaintiffs had ever heard of Boies Schiller before,

4

everyone believed that Wolf was still their attorney, and none expressed a desire to change attorneys.

Wolf alleges that the circumstances of the Boies Schiller Colombian "client raid" are corroborated by written, sworn declarations which he took from Does 1- 98 in the latter part of 2012 and which were recorded before a Colombian "notaria" (akin to a magistrate judge) in Apartado, Columbia. Wolf alleges that there were additional 51 plaintiffs who are also the subject of duplicate representation by Wolf and Boies Schiller, but that he was unable to reach the others in time to obtain supporting declarations needed to justify their inclusion in this action.

 Supplied with the signed power of attorney forms generated by Torrado, on April 14, 2010, Boies Schiller initiated suit in this MDL litigation on behalf of Does 1-98 -- in addition to over a thousand other Columbian nationals -- in the matter of *Henao Montes et al v. Chiquita Brands International Inc.,* Case No. 10-Civ-60573-MARRA.  These allegedly "duplicate" claims brought on behalf of Does 1-98 remain pending as of this date.

According to Wolf, he first brought the issue of the duplicate filings to the attention of two Boies Schiller attorneys in June, 2011 at a steering committee meeting of plaintiffs' counsel in Washington D.C.  The topic continued to be a subject of debate in later plaintiffs' counsel steering committee meetings and email exchanges, resulting in a "general consensus" that the first lawyer to obtain power of representation of an individual would be the authorized legal representative of that person in the MDL litigation unless and until there was evidence that the individual wanted to change attorneys.

Wolf further alleges that other plaintiffs' counsel in the MDL Group agreed to resolve overlapping representation issues through a "de-duplication process," an informal procedure by which a *prima facie* determination of an individual client's intent would be determined by

5

reference to which law firm obtained the earliest dated power of attorney. Wolf acknowledges that initially he participated in this process, in the course of which he provided Boies Schiller with a spreadsheet identifying the individuals whom he claimed to first represent and who had since identified by name as plaintiffs in the *Montes* complaint which Boies Schiller filed against Chiquita.

In October of 2011, all plaintiffs' attorney groups with dual or overlapping attorney representation issues in the MDL litigation submitted client data to an attorney associated with the Searcy Denney firm who was assigned the task of identifying conflicted client representation. This produced a preliminary report of eighty-eight overlapping cases between Wolf and Boies Schiller, a result which Wolf contended was underreported. This led to a stale-mate with no further action taken on the issue by the de-duplication coordinator since that time.[1]

In May, 2012, Wolf alleges he learned of Boies Schiller's intent to file an amended complaint in the ATS litigation which still contained duplicate claims for Does 1-98. Over Wolf's objections, on September 20, 2012 Boies Schiller proceeded to file a Third Amended Complaint in *Montes v. Chiquita Brands International*, Case No. 10-60573-Civ-Marra, again identifying individual plaintiffs by their true names. On November 21, 2012, Wolf filed this lawsuit on behalf of himself and Does 1-98.

## II.   Discussion

### A.  Request for Declaratory and Injunctive Relief

---

[1] Boies Schiller contends that this report "was not intended to be a conclusive determination" resolving individual representation issues, but rather "is a work in progress that, as of the signing of [2.19.13 affidavit of Boies Schiller member Douglas Mitchell] needs to be updated." [DE 597, p. 3]. As neither party has submitted any "updated" information on this process since the submission of briefing on defendant's motions to dismiss, presumably the de-duplication process as it pertains to the Wolf-Boies Schiller client representation conflict remains at a stand-still.

Upon careful review of the Complaint, and the parties' briefing on the defendant's motions to dismiss, the Court concludes that the instant Complaint -- to the extent it seeks declaratory and injunctive relief determining the proper legal representatives of Does 1-98 -- should not have been filed as a separate complaint seeking declaratory relief, but rather as a motion to disqualify Boies Schiller and enjoin it from unauthorized representation of Does 1- 98 in the *Montes* litigation.

With this re-characterization of the request for declaratory and injunctive relief, the Court will resolve the dispute over conflicting attorney representation in the context of the *Montes* litigation pursuant to its inherent authority to protect the orderly administration of justice and preserve the dignity of the tribunal. *See generally In re BellSouth Corp*., 334 F.3d 941 (11th Cir. 2003); *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985). To this end, it will schedule the motion for disqualification of Boies Schiller for evidentiary hearing in *Montes* as more particularly set forth in the decretal provisions of this order. In the interim, the Court directs the involved parties to resume mediation of their conflicting representation claims through the informal, voluntary "de-duplication" process in which they have previously participated. Failing satisfactory resolution of the issue in that forum, the matter will proceed to evidentiary hearing before the Court.

> B.   Tort Claims – Does 1 – 98

Until the disqualification issue is settled, the Court agrees that the tort claims asserted on behalf of Does 1 - 98 by Wolf in this proceeding are not constitutionally ripe and must be dismissed without prejudice for lack of subject matter jurisdiction. Alternatively, these claims must be dismissed without prejudice for failure to state a cause of action for lack of sufficient allegation of injury flowing from the alleged tortious behavior.

If it is ultimately determined that Boies Schiller is the authorized legal representative of this group in *Montes*, i.e. that Does 1 - 98 have effectively chosen Boies Schiller to act as substitute counsel in this MDL proceeding, then Wolf has no authority to assert these claims on their behalf regardless of the circumstances prompting a substitution of counsel.

On the other hand, if, as Wolf alleges, Does 1- 98 did not intend to retain Boies Schiller and were tricked into signing forms purporting to give power of attorney authority to Boies Schiller, then the powers of attorney are invalid and there has been no interruption in Wolf's representation of this group. Only in this latter contingent event could Does 1 - 98 claim potential injuries stemming from alleged unauthorized legal action taken on their behalf by Boies Schiller. Because a dispute is not ripe for judicial determination "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all," *Texas v. United States*, 523 U.S. 296, 300 (1998), these claims, based on "assumed potential invasions' of rights," have not matured to a point warranting judicial intervention. *Arizona v. California*, 283 U.S. 423 (1931).

The Court shall accordingly grant defendant's motion to dismiss the common law tort claims asserted on behalf of Does 1- 98 for lack of subject matter jurisdiction under Rule 12(b)(1) on grounds that the claims are not constitutionally ripe for adjudication. Alternatively, the claim is dismissed for failure to state a cause of action under Rule 12(b)(6) for failure to allege an existing injury proximately caused by the alleged misconduct. This ruling shall be without prejudice for plaintiffs to pursue these claims by way of a third-party complaint in the *Montes* action in the event Wolf is ultimately determined to be the authorized legal representative of this plaintiff group, and the clients authorize his pursuit of these claims on their behalf.

### C. Tort Claims – Attorney Wolf

#### 1. Conspiracy to Violate Antitrust Laws

With regard to the civil conspiracy to violate federal antitrust laws asserted by Wolf, individually, the Court agrees, based on *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), that the complaint fails to meet the "fair notice" pleading requirements of the Federal Rules of Civil Procedure. The plaintiff has not described with whom Boies Schiller has conspired, or the circumstances under which the alleged price-fixing agreements were made. Further, plaintiff has not explained how Boies Schiller's behavior has harmed or impacted the relevant legal market, i.e. the complaint does not explain how Boies Schiller and other plaintiffs' attorneys alleged agreement to limit the filing of individual claims against Chiquita has weakened competition in the relevant legal market.

Accordingly, the Court find the conclusory allegations of a conspiracy to drive plaintiff out of the market for legal services to persons injured by Chiquita insufficient to state a claim on which relief may be granted. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp.*, 711 F.2d 989 (11th Cir. 1983); *Boczar v. Manatee Hospitals & Health Systems, Inc.,* 731 F. Supp. 1042 (M.D. Fla. 1990); *CIBA Vision Corp. v. De Spirito*, 2010 WL 553233 (N.D. Ga. 2010); *In re Late Fee and Over-Limit Fee Litigation*, 528 F. Supp. 2d 953 (N.D. Cal. 2007). The court shall therefore grant the defendant's motion to dismiss Wolf's antitrust claim for failure to state a claim under Rule 12(b)(6) without prejudice. Should he choose to proceed, Wolf is granted leave to file an amended complaint within thirty (30) days from the date of this order which specifically identifies all alleged co-conspirators and otherwise cures the pleading deficiencies noted above.

### 2. Tortious Interference and Negligence Claims

Finally, as to the tortious interference and negligence claims asserted on behalf of Wolf individually, the Court shall dismiss the claims for lack of jurisdiction under 12 (b)(1) as not constitutionally ripe. This dismissal shall be without prejudice to Wolf being able to reassert them after the conflicting attorney representation issue is determined. If Wolf is determined to be the lawful representative of Does 1- 98, on the theory that Boies Schiller's powers of attorney were fraudulently obtained and therefore void, then Wolf has suffered no injury as a result of the alleged tortious behavior and his attorney-client relationship with Does 1- 98 remains intact. *See generally Patton Boggs, LLP v. Chevron Corp.*, 791 F. Supp. 2d 13, 19-22 (D.D.C. 2011) (law firm failed to state tortious interference claim where it failed to allege facts showing that attorney-client contract was in fact breached).

If, on the other hand, Boies Schiller is installed as the successor legal representative of this group, Wolf possibly has a claim for tortious interference depending on the circumstances prompting the substitution. *See e.g. Volz v. Liberty Mut. Ins. Co*., 498 F.2d 659 (5th Cir. 1974) (no action for tortious interference with attorney-client contract under Alabama law in absence of fraud, force or some form of coercion); *Savage & Turner, P.C. v. Fidelity & Deposit Co. of Maryland*, 854 F. Supp. 2d 1359 (S.D. Ga. 2011) (to establish tortious interference with contract under Georgia law, plaintiff must show wrongful action that generally involves predatory tactics such as violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits); *Ferris v. South Fla. Stadium Corp*, 926 So.2d 399 (Fla. 3d DCA 2006) (claim for tortious interference with at-will attorney-client relationship lies only where interference is direct and unjustified, i.e. where a party has encouraged or caused a rupture in the relationship by means of fraud, coercion or other wrongdoing). *Compare Kreizinger v.*

*Schlesinger,* 925 So.2d 431 (Fla. 4th DCA 2006) (where a client initiates contact with a new lawyer which results in discharge of first lawyer and hiring of new lawyer, no intentional and unjustified interference is present). Because the possible substitution of Boies Schiller for Wolf as attorney for Does 1 – 98 is a contingent future event on which Wolf's tortious interference necessarily hinges, it is not constitutionally ripe for determination at this juncture.

### III. DECRETAL PROVISIONS

Based on foregoing, it is **ORDERED AND ADJUDGED**:

1. To the extent the plaintiffs' complaint in Case No. 13-80146 seeks declaratory and injunctive relief respecting the alleged conflicting dual attorney representation, this pleading is deemed to operate as a motion to disqualify Boies Schiller and enjoin it from further representation of Does 1-98 in the *Montes* ATS action, Case No. 10-60573-Civ-MARRA. With this re-characterization of the pleading, Boies Schiller's motions to dismiss the declaratory judgment and injunctive relief claims in Case No. 13-80146 are **DENIED as MOOT**.

2. The plaintiffs' motion to disqualify and enjoin Boies Schiller from representation of Does 1-98 in *Montes* is scheduled for evidentiary hearing before the undersigned on July 23, 2015 at 9:00 a.m., in Courtroom 4, 701 Clematis Street, West Palm Beach, FL 33401. In the interim, the parties shall pursue resolution of this matter in the above-described voluntary "de-duplication" process and file a written report with the Court within **THIRTY (30) DAYS** from the date of entry of this order advising as to the status of their dispute. If either party is unhappy with the conclusion of the de-duplication committee, or if the de-duplication committee is unable or unwilling to conclude the matter within

this time frame, the Court will proceed with evidentiary hearing and determine the matter.

3. The defendants' motion to dismiss Does 1 - 98's claims for fraudulent inducement to contract, tortious interference with contract, invasion of privacy, negligence, malpractice and conspiracy to violate the antitrust laws for lack of subject matter jurisdiction, or alternatively, for failure to state a claim, is **GRANTED** and these claims are **DISMISSED WITHOUT PREJUDICE.**

4. The defendants' motion to dismiss the claims for tortious interference of contract and negligence, asserted on behalf of Wolf, individually, in Case No. 13-80146, for lack of subject matter jurisdiction is **GRANTED** and these claims are **DISMISSED WITHOUT PREJUDICE.**

5. The defendants' motion to dismiss the claim for conspiracy to violate federal antitrust laws, asserted by Wolf, individually, in Case No. 13- 80146, for failure to state a claim in accordance with pleading requirements of Rule 8 is **GRANTED** and this claim is **DISMISSED WITHOUT PREJUDICE** based on the pleading deficiencies identified in this order.  Attorney Wolf shall have **THIRTY (30) DAYS** to file amended pleading if he chooses to pursue this claim.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 5th day of June, 2015.

KENNETH A. MARRA
United States District Judge

cc. All counsel